## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| THE TRANSPARENCY PROJECT, | |
| Plaintiff, | CIVIL ACTION No. 4:21CV121 |
| | JUDGE SEAN D. JORDAN |
| v. | |
| U.S. DEPARTMENT OF JUSTICE, et al | |
| Defendants. | |

## **DEFENDANTS DOJ, CIA, AND NSA'S MOTION FOR SUMMARY JUDGMENT**

Defendants the United States Department of Justice ("DOJ")[1], the National Security Agency ("NSA"), and the Central Intelligence Agency ("CIA"), move for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7. The reasons for this motion are set forth in the incorporated briefing, as well as the attached declarations of Kara Cain (EOUSA) (attached as Exhibit B), Courtney J. O'Keefe (CRM) (attached as Exhibit C), Kilian Kagle (CRT), (attached as Exhibit D), Ofelia C. Perez (OIG) (attached as Exhibit E), Linda M. Kiyosaki (NSA) (attached as Exhibit F), and Vanna Blaine (CIA) (attached as Exhibit G).

---

[1] The DOJ components in this motion include the Criminal Division ("CRM"); the Office of Inspector General ("OIG"), the Executive Office of United States Attorneys ("EOUSA"); and the Civil Rights Division ("CRT").

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 1

    I.  PLAINTIFF'S FOIA REQUESTS ........................................................................ 1

    II.  PROCEDURAL HISTORY BY AGENCY ...................................................... 10

STATEMENT OF THE ISSUES ................................................................................ 12

    I.  PLAINTIFF'S IDENTIFICATION OF ISSUES TO BE BRIEFED .............. 12

    II.  ISSUES TO BE BRIEFED ................................................................................ 13

STATEMENT OF LAW ................................................................................................ 14

    I.  SUMMARY JUDGMENT STANDARD ........................................................ 14

    II.  ADEQUACY OF SEARCHES ........................................................................ 15

    III. *GLOMAR* ........................................................................................................ 16

    IV. FOIA EXEMPTIONS ....................................................................................... 17

ARGUMENT & AUTHORITIES .............................................................................. 19

    I.  CRIMINAL DIVISION ................................................................................... 19

    II.  EOUSA .............................................................................................................. 25

    III. OIG ...................................................................................................................... 26

    IV. NSA .................................................................................................................... 31

    V.  CIA ..................................................................................................................... 34

CONCLUSION ............................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amuso v. DOJ*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009) ....................................... 19

*Campbell v.* SSA, 446 F.App'x 477, 480 (3rd Cir. June 3, 2011)..................................... 15

*CIA v. Sims,* 471 U.S. 159, 167 (1985)............................................................................. 18

*Defenders of Wildlife v. U.S. Dep't of Justice*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) ......... 15

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995) ................................................ 14

*DiBacco v. U.S.* Army, 795 F.3d 178, 191 (D.C. Cir. 2015) ........................................... 15

*Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) ............................... 17

*FBI v. Abramson*, 456 U.S. 615, 621 (1982) ................................................................... 14

*Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982) ............................................. 15, 17

*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)...................... 16

*Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979) ................................................. 15

*Hefferman v. Azar*, 417 F.Supp. 3d 1, 12 ....................................................................... 16

*Keys v. DHS*, NO. 08-0726, 2009 WL 614755, at *5 ................................................25, 26

*Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987)............................................................. 19

*Kidd v. U.S. Dep't of Justice*, 362 F. Supp. 2d 291, 295 (D.D.C. 2005).......................... 16

*Krikorian v. Dep't of State,* 984 F.2d 461, 465 (D.C. Cir. 1993)...................................... 18

*Larson v. U.S. Dep't of State*, 565F.3d 857, 865 (D.C. Cir. 2009) ................................. 15

*Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ........................................... 15

*Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57,68 (D.C. Cir. 1990)................................ 14

*Roberts v. U.S. Dep't of Justice*, Civ. A. No. 92-1707 (NHJ), 1995 WL 356320, at *1 (D.D.C. Jan. 29, 1993) ............................................................................................. 16

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.1991) .................................. 16

*Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003).......................... 16

*U.S. Dep't of Justice Reporters Comm. For Freedom of Press*, 489 U.S. 749, 771-76 (1989)................................................................................................................. 18, 28

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982) ............................ 19

*Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)................. 15

*W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001); ........................................................................................................ 16

*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)................. 14, 15

*Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).................................................. 15, 17

**Statutes**

5 U.S.C. §552 *et seq* ......................................................................................................passim

**Rules**

Fed. R. Civ. P. 56(a) .........................................................................................................i, 14

Local Rule 7....................................................................................................................... i

## INTRODUCTION

Plaintiff, The Transparency Project, filed this lawsuit pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq,* based on ten individual requests seeking a wide range of documents submitted to the Defendants. In response to Plaintiff's requests, Defendants issued *Glomar* responses to portions of Plaintiff's requests, as appropriate, refusing to confirm or deny the existence or non-existence of certain records, and otherwise produced all responsive records, subject to appropriate withholdings. As set forth in the attached detailed declarations, the Defendants have established that the searches were adequate and that the withholdings under each of the FOIA exemptions were proper. This case presents no novel or difficult questions of law. Because Defendants have satisfied their obligations under FOIA, the Court should grant summary judgment in Defendants' favor.

## BACKGROUND

### I.  PLAINTIFF'S FOIA REQUESTS

A.    July 22, 2020 Request (Attkisson)

On July 22, 2020, Plaintiff submitted a FOIA request to the Central Intelligence Agency, National Security Agency, Office of the Director of National Intelligence, and the following components of the Department of Justice: Federal Bureau of Investigation, Office of the Attorney General, National Security Division, Executive Office for U.S. Attorneys, and Office of the Inspector General. The Plaintiff referenced a lawsuit filed by journalist Sharyl Attkisson and requested the opportunity to view the following:

1. For each instance of surveillance described in Ms. Attkisson's complaint, I wish to view all documents, records, communications, and other tangible evidence (e.g., audio, video, or metadata) identifying or revealing (1) the government contractor(s), employee(s), or representative(s) who authorized, conducted, and/or assisted the surveillance; and (2) the factual and/or legal rationale, if any, for conducting such surveillance. If, for example, the government sent a contractor or employee to Ms. Attkisson's home disguised as a Verizon employee, then documents reflecting that person's identity should be revealed. As used in this letter, "surveillance" includes, but is not limited to, efforts to wiretap or hack into the electronic devices or accounts of the targeted person or persons. This request further includes, but is not limited to, documents, records, or communications identifying (1) the government affiliates, agents, employees or contractors involved in such activities, and (2) the targets of any such activities.

2. For the period from January 20, 2009 until the present, I wish to view all documents, records, communications, and other tangible evidence (e.g., audio, video, or metadata) revealing or describing surveillance of any and all journalists, journalism/media companies, and/or executives at journalism/media companies in the United States by any and all government employees, agents, affiliates, or contractors. For each such instance of surveillance, I wish to view all documents, records, communications, and/or other tangible identifying or revealing (1) the government contractor(s), employee(s), or representative(s) who authorized, conducted, and/or assisted the surveillance; and (2) the factual and/or legal rationale, if any, for conducting the surveillance.

3. If any instances of surveillance described by the foregoing paragraphs were permitted by court order, I request the opportunity to view all such orders as well as any and all applications, affidavits, or motions seeking each respective order.

[ECF No.8, Exh. 1].

B.      July 22, 2020 Request (Surveillance)

On July 22, 2020, Plaintiff submitted a FOIA request to the Central Intelligence

Agency, National Security Agency, Office of the Director of National Intelligence, the

inspectors general for each of those entities, and the following components of the

Department of Justice: Federal Bureau of Investigation, Office of the Attorney General,

Office of the Inspector General and National Security Division. Plaintiff discussed evidence of unlawful surveillance and requested the opportunity to view the following:

1. All documents, records, communications and/or other tangible evidence reflecting the identities of any and all contractors (both companies and natural persons) who searched (whether properly or improperly) the NSA/FBI database during the Obama Administration. The term "other tangible evidence," as used in this letter, should be construed broadly to include audio, video, and communications metadata. This request further includes, but is not limited to, any and all contracts (or other documents) that authorized (or purported to authorize) each contractor to utilize the NSA/FBI database, as well as records reflecting any and all payments to such contractors.

2. All documents, records, communications and/or other tangible evidence identifying any and all U.S. Government personnel who improperly searched the NSA/FBI database during the Obama Administration. This request includes, but is not limited to, documents, records, communications and/or other tangible evidence identifying what agency, department or other government entity employed the personnel described above.

3. All documents, records, communications and/or other tangible evidence reflecting the identities of any and all third parties (other than the contractors identified above) who are known to have received information from improper/unauthorized/unlawful searches of the NSA/FBI database during the Obama Administration, as well as all documents, records, communications and/or other tangible evidence that reveals how such information made its way to the third parties. For example, all evidence revealing who searched for "Michael Cohen" (as described above) and how the "Michael Cohen" information made its way to Christopher Steele should be produced for inspection, as well as evidence revealing the identities of any and all persons responsible for transmitting the information to Christopher Steele.

4. All documents, records, communications and/or other tangible evidence identifying any and all persons (natural or corporate) in the United States whose names or identifying information were improperly searched in the NSA/FBI database during the Obama Administration.

5. For each person or entity described in the previous paragraph, I request the opportunity to view any and all documents, records, communications and/or other tangible evidence identifying (1) the person or persons (natural or corporate) responsible for the search, and (2) the exact search terms used by the person or persons who conducted the search.

3

6. For each of the following individuals, TTP requests not only the information requested above, but the actual data that was obtained / produced by any and all improper searches from January 20, 2009 until the present: Dianna L. Barreto, Raymond McGovern, Eden P. Quainton, Larry C. Johnson, Edward Butowsky, Matthew C. Couch, Ty Clevenger, Trevor Fitzgibbon, and Elliot J. Schuchardt. TTP further requests any and all information from the NSA/FBI database regarding the foregoing individuals that was shared with persons or entities outside of the FBI, Department of Justice, or U.S. intelligence agencies, regardless of whether the original search was proper or improper. TTP has attached release authorizations and additional identifying information for each of these individuals, and it requests the information solely as the representative of each individual. The information will not be reviewed or released by TTP but will be transmitted to each respective individual.

7. If any of the information requested in this letter was destroyed or discarded (whether intentionally or automatically), I request the opportunity to view any and all documents, records, communications and/or other tangible evidence that (1) identify the person or persons responsible for destroying or discarding it, and/or (2) explain why it was destroyed or discarded.

[ECF No. 8, Exhibit 2].

C. July 24, 2020 Request (Petraeus)

On July 24, 2020, Plaintiff expanded on an earlier FOIA request, seeking information from the Office of the Attorney General, Office of the Deputy Attorney General, Office of the Inspector General, Office of Legislative Affairs, and Executive Office for U.S. Attorneys. The request sought the following information:

…the opportunity to view all documents, records, communications and/or other tangible evidence pertaining to whether former Central Intelligence Agency Director David Petraeus mishandled classified information or sold such information during his tenure as CIA director. This request includes, but is not limited to, documents, records, communications and/or other tangible evidence in the possession of the Office of the Inspector General of the CIA and/or the Office of the Intelligence Community Inspector General. This request further includes, but is not limited to, any draft indictments, draft arrest warrants, actual arrest warrants, and/or records of arrest.

4

[ECF No. 8, Exh. 3].

    D. <u>August 25, 2020 Request (Third Party Storage)</u>

    On August 25, 2020, Plaintiff submitted a FOIA request to the Central Intelligence

Agency, National Security Agency, Office of the Director of National Intelligence and

their respective inspectors general, as well as the following components of the

Department of Justice: the Federal Bureau of Investigation, Office of the Attorney

General, National Security Division, Executive Office for U.S. Attorneys, and Office of

the Inspector General. Plaintiff referenced  unlawfully intercepted data and requested the

opportunity to view the following:

> 1. Documents, records, communications and/or other tangible evidence identifying
> any and all private-sector parties (e.g., companies or natural persons) who have
> managed or stored such intercepted data from January 1, 2009 until the present,
> either with or without government authorization. The term "intercepted data," as
> used in this request, includes both raw data and processed data. If, for example, the
> government is aware of a private sector company that has stored intercepted data
> for purposes of marketing or research, then the government should produce
> documents reflecting that fact. This request includes, but is not limited to,
> contracts or other documents authorizing a private-sector party to manage or store
> intercepted data.
> 2. Documents, records, communications and/or other tangible evidence identifying
> any and all private-sector parties (e.g., companies or natural persons) who have
> extracted or diverted such intercepted data from January 1, 2009 until the present.
> As used herein, the term "diverted" refers to data intercepts that were copied or
> directed to recipients other than the government itself. This request includes data
> that was diverted in bulk as the government was intercepting it, as well as data that
> was subsequently extracted, downloaded, or transferred from storage. This request
> should be construed to cover all intercepted data, regardless of whether the private
> party was authorized to extract it. As used herein, "extracted or diverted" refers to
> bulk diversion, downloading, or transfer of data (whether raw or processed) as
> opposed to targeted searches for individuals. If, for example, a company was
> diverting intercepted data to its own storage devices, then documents reflecting
> that should be produced. This request includes, but is not limited to, the following:
> logs of all private-sector entities and/or persons who were granted access to the
> data along with the dates, duration of each access, and any evidence indicating

5

whether the data was downloaded from the government's network. This request further includes, but is not limited to, contracts or other documents authorizing private-sector parties to divert, download, or extract intercepted data.

[ECF No. 8, Exh. 4].

E.  August 26, 2020 Request (Renewed Attkisson)

On August 26, 2020, Plaintiff renewed its July 22, 2020 FOIA request for records related to surveillance of Sharyl Attkisson and other journalists. [ECF No. 8, Exh. 5].

F.  November 25, 2020 Request (Attkisson w/ Release)

On November 25, 2020, Plaintiff submitted a renewed FOIA request for records of surveillance of Sheryl Attkisson, this time including a release authorization from Ms. Attkisson. The request was directed to the Office of the Director of National Intelligence sought the following:

For each instance of surveillance described in Ms. Attkisson's complaint, TTP wishes to view all documents, records, communications, and other tangible evidence (e.g., audio, video, or metadata) identifying or revealing (1) the government contractor(s), employee(s), or representative(s) who authorized, conducted, and/or assisted the surveillance; and (2) the factual and/or legal rationale, if any, for conducting such surveillance. If, for example, the government sent a contractor or employee to Ms. Attkisson's home disguised as a Verizon employee, then documents reflecting that person's identity should be revealed. As used in this letter, "surveillance" includes, but is not limited to, efforts to wiretap or hack into the electronic devices or accounts of the targeted person or persons. This request further includes, but is not limited to, documents, records, or communications identifying (1) the government affiliates, agents, employees or contractors involved in such activities, and (2) the targets of any such activities.
Any other instances of surveillance of Ms. Attkisson or her household since January 20, 2008.

[ECF No. 8, Exh. 6].

G.  January 25, 2021 Request (FISA)

6

In a December 6, 2019 order from the Foreign Intelligence Surveillance Court, Judge James E. Boasberg indicated that approximately 16,000 U.S. citizens were improperly surveilled under the guise of Section 702 of the Foreign Intelligence Surveillance Act. See December 6, 2019 Order, https://www.intelligence.gov/assets/documents/702%20Documents/declassified/2019_702_Cert_FISC_Opinion_06Dec19_OCR.pdf. On January 25, 2021, Plaintiff submitted a Freedom of Information Act request to the Office of the Director of National Intelligence, the National Security Agency, the Federal Bureau of Investigation, and the Central Intelligence Agency seeking the following:

> …all documents, records and other tangible evidence reflecting improper surveillance of the individuals described above. This request includes, but is not limited to, records reflecting the names and addresses of each such individual, the dates of each improper data search or surveillance, and the search terms employed. This request further includes, but is not limited to, records identifying (1) each and every person involved in improper searches / surveillance of each of the roughly 16,000 individuals, and (2) the public or private entities who employed the persons conducting the searches or surveillance.

> …all documents, records, and other tangible evidence reflecting whether information from the searches / surveillance of the foregoing 16,000 individuals was shared with any persons or entities outside of the FBI, CIA, NSA or ODNI. If, for example, the search results were shared with private contractors, members of Congress, or foreign governments, then records reflecting that should be produced.

[ECF No. 8, Exh. 7].

H. <u>January 26, 2021 Request (Byrne)</u>

In a December 15, 2020 video interview published on Facebook, Patrick M. Byrne claimed that he assisted the FBI with conveying an $18 million bribe to former Secretary

of State Hillary Clinton. See December 15, 2020 Interview of Patrick Byrne,

https://www.facebook.com/watch/?v=398757168207111. On January 26, 2021, Plaintiff

submitted a Freedom of Information Act request to various components of the U.S.

Department of Justice: Office of the Attorney General, Criminal Division, National

Security Division, Executive Office for United States Attorneys, Office of the Inspector

General, Office of Special Counsel John Durham, and Federal Bureau of Investigation. It

sought the following:

> (1) All documents, records, recordings, communications or other tangible evidence regarding Mr. Byrne's assistance in the FBI's investigation of Hillary Clinton as described in the interview.

> (2) All documents, records, recordings, communications or other tangible evidence regarding "Operation Snow Globe," the bribery investigations described by Mr. Byrne, or any related investigations. This request includes, but is not limited to, evidence reflecting the persons or entities involved in any actual or purported bribes, the amounts offered or paid, the nature of any quid pro quo, and the final disposition of the funds.

> (3) All documents, records, recordings, communications or other tangible evidence regarding whether government personnel (e.g., FBI, Department of Justice, or White House) quashed the investigation of Hillary Clinton as alleged by Mr. Byrne.

[ECF No. 8, Exh. 8].

I.    February 2, 2021 Request (Hardy)

On February 2, 2021, Plaintiff submitted a Freedom of Information Act request to

the following components of the U.S. Department of Justice: Office of Inspector General,

Executive Office of U.S. Attorneys, and the FBI. It reads as follows:

> I have enclosed a January 27, 2020 letter that I sent to U.S. Attorneys John H. Durham and Richard Donoghue as well as Inspector General Michael Horowitz.  On April 22, 2020, I received a letter from the Office of

Inspector General indicating that the matter had been referred to the FBI's inspection division and the Executive Office for United States Attorneys.

On behalf of The Transparency Project, and as authorized by the Freedom of Information Act, I request the opportunity to view all documents, records, recordings, communications or other tangible evidence arising from or obtained during any investigation of the matters outlined in my January 27, 2020 letter.  This request includes, but is not limited to, communications whereby the Office of Inspector General referred the matter to the FBI or EOUSA. I further request, on behalf of The Transparency Project, records of all investigations of David M. Hardy since January 1, 2017.

[ECF No. 8, Exh. 9].

J.   Februray 16, 2021 Request (Election)

On February 16, 2021, Plaintiff sent a Freedom of Information Act request to the

Office of the Director of National Intelligence, National Security Agency, Central

Intelligence Agency, Department of Defense, and the following components of the

Department of Justice: Office of the Attorney General, Office of the Inspector General,

National Security Division, Civil Rights Division, Executive Office for U.S. Attorneys,

and Federal Bureau of Investigation. It sought the following:

1. All evidence that any foreign governments tampered with voting during the 2016 and/or 2020 Presidential elections.

2. All U.S. Government reports about foreign interference in the 2020 Presidential election, e.g., the report produced by former Director of National Intelligence John Ratcliffe.

3. All evidence that the U.S. Government, its agents, its contractors, or third parties acting on its behalf (including foreign governments or agents) had developed or otherwise possessed the ability to (1) gain secret or unauthorized entry into any electronic voting system or voting machine deployed anywhere in the United States as of 2020; and/or (2) alter voting totals in such a voting system or machine. If, for example, the Central Intelligence Agency had obtained or developed the capability to hack into machines produced by Dominion Voting

Systems Corporation, then records reflecting that should be produced. As used in this letter, "unauthorized entry" refers to access that was not authorized by the laws or regulations of the entity conducting the election.

4. All evidence that any foreign governments, foreign agents, or other third parties (e.g., domestic political actors) had developed or otherwise possessed the ability to (1) gain secret or unauthorized entry into any electronic voting system or voting machine deployed anywhere in the United States; and/or (2) alter voting totals in such a voting system or machine.

5. All evidence the U.S. Government, its agents, its contractors, or third parties acting on its behalf (including foreign governments or agents) (1) gained secret or unauthorized entry into any electronic voting system or voting machine deployed anywhere in the United States during the 2020 Presidential election; and/or (2) altered voting totals in such a voting system or machine during the 2020 Presidential election.

6. All evidence that any foreign governments, foreign agents, or other third parties (e.g., domestic political actors) (1) gained secret or unauthorized entry into any electronic voting system or voting machine deployed anywhere in the United States during the 2020 Presidential election; and/or (2) altered voting totals in such a voting system or machine during the 2020 Presidential election. If, for example, the National Security Agency intercepted communications whereby foreign actors changed vote totals in the United States, records of those communications should be produced.

7. All evidence that state or local officials that state or local officials altered voting results in the 2020 Presidential election, e.g., by tampering with electronic voting results or inserting fabricated ballots.

[ECF No. 8, Exh. 10].

## II.  PROCEDURAL HISTORY BY AGENCY

A.  <u>CRM: January 26, 2021 (Byrne)</u>

CRM received one request from Plaintiff, dated January 26, 2021. [ECF No. 8,

Exh. 8]. The procedural history of this request is detailed in paragraphs 6-12 and Exhibits

A-E of the O'Keefe Declaration.

B. <u>OIG: July 22, 2021 (Surveillance), July 22, 2021 (Attkisson), July 24, 2020 (Petraeus), August 25, 2020 (Third Party Storage), January 26, 2021 (Byrne), February 2, 2021(Hardy) & February 16, 2021(Election)</u>

OIG received seven requests from Plaintiff for the period of July 2020 through February 2021. The procedural histories of the requests submitted to OIG are detailed in paragraphs 5-26 and Exhibits 1-21 of the Perez Declaration.

C. <u>EOUSA: July 24, 2020 (Petraeus), August 26, 2020 (Renewed Attkisson), January 26, 2021 (Byrne), February 2, 2021 (Hardy) & February 16, 2021 (Election)</u>

EOUSA received five requests from Plaintiff for the period of July 2020 through February 2021. The procedural histories of the requests submitted to EOUSA are detailed in paragraphs 5-25 and Exhibits A-O of the Cain Declaration.[2]

D. <u>CRT: February 16, 2021 (Election)</u>

CRT received one FOIA request from Plaintiff, dated February 16, 2021. The procedural history of this request is detailed in paragraphs 4-21 and Exhibits A-D of the Kagle Declaration.

E. <u>NSA: July 22, 2020 (Attkisson), July 22, 2020 (Surveillance), August 25, 2020 (Third Party Storage), August 26, 2020 (Renewed Attkisson), January 25, 2021 (FISA) & February 16, 2021 (Election)</u>

NSA received six requests from Plaintiff for the period of July 2020 through February 2021. The procedural histories of the requests submitted to NSA are detailed in paragraphs 12-17 and Exhibits A-G of the Kiyosaki Declaration.

---

[2] In response to this litigation, EOUSA re-reviewed the February 2, 2021 (Hardy) request and determined that there were districts that may potentially have responsive records. Since the last status report, EOUSA has initiated a search for responsive records and will provide a supplemental response when the searches are complete. [Cain Declaration, ¶ 23].

11

F. <u>CIA: July 22, 2022 (Attkisson), July 22, 2020 (Surveillance), August 25, 2020 (Third Party Storage), January 25, 2021 (FISA) & February 16, 2021 (Election)</u>

CIA received five requests from Plaintiff for the period July 2020 through February 2021. The procedural histories of the requests submitted to CIA are detailed in paragraphs 8-21 and Exhibits A-U of the Blaine Declaration.

## STATEMENT OF THE ISSUES

## I.    PLAINTIFF'S IDENTIFICATION OF ISSUES TO BE BRIEFED

By order dated May 3, 2022, the Court instructed Plaintiff to identify issues for briefing. [ECF No. 27]. In compliance with this order, counsel for Plaintiff stated as follows:

> "According to the scheduling order, I'm supposed to list the issues that need to [sic] briefed. We request briefing on all of the issues in the last status report with the exception of those that found no responsive documents."

[Exhibit A: May 25th email from Plaintiff's counsel, redacted].

Thus, by Plaintiff's stipulation, all "no records" responses are not at issue and not addressed in this brief. For clarification, the following is a complete list of the "no records" responses, by agency:

A. <u>OIG</u>

OIG issued no records responses to the following requests: July 22, 2020 (Surveillance); July 24, 2020 (Petraeus); August 25, 2020 (Third Party Storage); January 26, 2021 (Byrne); February 2, 2021 (Hardy) Part 1; February 16, 2021 (Election).

B. <u>EOUSA</u>

EOUSA issued no records responses to the following requests: July 24, 2020 Petraeus); August 26, 2020 (Renewed Attkisson); and January 26, 2021 (Byrne).

C. <u>CRT</u>

CRT issued a no records response to the February 16, 2021 request (Election), the only request submitted to CRT. Thus, no issues are being brief as to CRT.

D. <u>NSA</u>

NSA issued no records responses to the following requests: July 22, 2020, Parts 2-7 (Surveillance); February 16, 2021 (Election) Part 2.

## II.    ISSUES TO BE BRIEFED

The issues addressed in this brief are as follows:

1.    Whether CRM properly denied Plaintiff's January 26, 2021 (Byrne) request as improper;

2.    Whether EOUSA properly denied Plaintiff's February 16, 2021 (Election) request as improper;

3.    Whether OIG performed adequate searches, properly issued *Glomar* responses in partial response to Plaintiff's FOIA requests, and properly withheld information pursuant to FOIA exemptions in response to Plaintiff's FOIA requests.

4.    Whether NSA properly issued *Glomar* responses in partial response to Plaintiff's FOIA requests, properly referred certain requests to other agencies, and properly denied certain requests.

5.    Whether CIA performed adequate searches, properly issued *Glomar* responses in partial response to Plaintiff's FOIA requests, and properly withheld information pursuant to FOIA exemptions in response to Plaintiff's FOIA requests.

## STATEMENT OF LAW

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA actions are typically resolved on summary judgment, *see Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007), and the Court conducts a *de novo* review of the agency's response to any challenged FOIA requests, *see* 5 U.S.C. § 552 (a)(4)(B). When a requester challenges the adequacy of an agency's search, "[i]n order to obtain summary judgment, the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The agency must also justify any records withheld (in whole or in part) subject to FOIA's statutory exemptions. Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d

857, 865 (D.C. Cir. 2009) (quotation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473F.3d 370, 374-75 (D.C. Cir. 2007) (citing *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982); *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

## II.     ADEQUACY OF SEARCHES

Courts require agencies to conduct searches "reasonably calculated to uncover all relevant documents." *Campbell v.* SSA, 446 F.App'x 477, 480 (3rd Cir. June 3, 2011)(quoting *Weisberg v.* DOJ, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The Court may grant summary judgment concerning the adequacy of an agency's search for responsive records based on information provided in "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby*, 920 F.2d at 68); *see Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986). "Such agency affidavits attesting to a reasonable search 'are afforded a presumption of good faith,' and 'can be rebutted only with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Justice*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *TransUnion, LLC v. FTC*, 141 F. Supp. 2d 62, 64 (D.D.C. 2001)).

"Adequacy - not perfection - is the standard that FOIA sets," and agencies "need not knock down every search design advanced by every requester." *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015). Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative

15

judgment and expertise" and is "hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quotation omitted).

To that end, in evaluating the adequacy of a search, courts accord agency affidavits a presumption of good faith that cannot be rebutted by speculation "about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.1991) (internal quotation and citation omitted); *see also Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (same). Rather, to establish the sufficiency of its search, the agency's affidavits need only explain the "scope and method of the search" in "reasonable detail."*Kidd v. U.S. Dep't of Justice*, 362 F. Supp. 2d 291, 295 (D.D.C. 2005); *see also*, *Hefferman v. Azar*, 417 F.Supp. 3d 1, 12 (explaining that agency "properly searched the files of all potential custodians who reasonably could have possessed [records]" where agency identified the specific custodians and locations searched and also confirmed why others were not searched.). FOIA does not require agencies to search every record system, but only those systems in which the agency believes responsive records are likely to be located. *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001); *Roberts v. U.S. Dep't of Justice*, Civ. A. No. 92-1707 (NHJ), 1995 WL 356320, at *1 (D.D.C. Jan. 29, 1993). As explained below, a reasonable search is precisely what Defendants performed here.

### III.    *GLOMAR*

A *Glomar* response is proper where acknowledging the existence of records would

implicate one of the FOIA exemptions. *Gardels,* 689 F.2d at 1103. To justify a *Glomar* response, "[t]he agency must demonstrate that acknowledging the mere existence of responsive records would disclose exempt information." *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (citing *Wolf*, 473 F.3d at 374). But in doing so, the agency's explanatory burden is not demanding, and the standard is, ultimately, no different than in the typical FOIA case: "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf*, 473 F.3d at 374-75 (quoting *Gardels* at 1105)). "In *Glomar* cases, courts may grant summary judgment on the basis of agency affidavits that contain 'reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Elec. Privacy Info. Ctr.*, 678 F.3d at 931 (quoting *Gardels*, 689 F.2d at 1105). If a *Glomar* response is appropriate, "the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *PETA v NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014).

## IV.    FOIA EXEMPTIONS

### A.  Exemption 1: Classified Information

Exemption 1 protects from disclosure those records that are (a) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and (b) are in fact properly classified pursuant to such Executive Order. 5 U.S.C. § 552 (b)(1). Executive Order 13526 ("E.O.

13526") is the current controlling executive order applicable to the protection of national security information.

   B. Exemption 3: Information Protected by Statute

Exemption 3 protects from disclosure information which is specifically exempted from disclosure by statute, provided that the statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue. 5 U.S.C. § 552 (b)(3). In weighing the validity of this exemption, a court must first consider whether the statute identified by the agency is in fact a withholding statute, and then whether the withheld material satisfies the statute's criteria. *See CIA v. Sims,* 471 U.S. 159, 167 (1985); *Krikorian v. Dep't of State,* 984 F.2d 461, 465 (D.C. Cir. 1993).

   C. Exemption 6 and 7(C): Unwarranted Invasion of Personal Privacy

Exemption 6 protects from disclosure personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552 (b)(6). Exemption 7(C) similarly protects from disclosure records or information compiled for law enforcement purposed when disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552 (b)(7)(C). Exemptions 6 and 7(C) balance individuals' privacy interests in protecting information from disclosure against the public interest in such disclosure. *See generally U.S. Dep't of Justice Reporters Comm. For Freedom of Press*, 489 U.S. 749, 771-76 (1989).

The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."

*U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from government records." *Id.* at 602. The privacy interest in Exemption 6 "belongs to the individual, not the agency." *Amuso v. DOJ*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009).

For purposes of Exemption 7, records are "compiled for law enforcement purposes" if there is "a nexus between the agency's activity . . . and its law enforcement duties." *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987).

## ARGUMENT & AUTHORITIES

### I. CRIMINAL DIVISION

The sole issue relative to the Criminal Division is whether the Criminal Division properly denied Plaintiff's January 26, 2021 (Byrne) request as improper. A proper FOIA/PA request must reasonably describe the records sought and must be made in accordance with agency [in this case, DOJ] regulations. 5 U.S.C. § 552 (a)(3)(A). Pursuant to DOJ FOIA regulations, requesters must provide sufficient detail regarding the records sought to enable personnel to locate the records with a reasonable amount of effort. Requesters should provide, to the extent possible, specific information to assist components in identifying requested records. [O'Keefe Declaration, ¶ 13].

A. Criminal Division Records System

The Department of Justice has a decentralized FOIA system. Each DOJ component maintains and processes its own records in response to FOIA requests. The

FOIA/PA Unit oversees the processing of FOIA requests submitted to the Criminal Division, which comprises seventeen separate and distinct sub-offices or units that are generally responsible for enforcing specific federal criminal laws and formulate criminal enforcement policy on varying criminal matters within their designated legal purview.[3] [O'Keefe Declaration, ¶ 14].

Criminal Division records are customarily maintained by individual investigatory interests, prosecution, or criminal enforcement policy and are kept in various sub-offices within the Criminal Division based on their mission and duties. The Criminal Division does not maintain a central records system or singular records database that may be searched for FOIA purposes. [O'Keefe Declaration, ¶ 15].

Accordingly, when a specific Criminal Division section is not mentioned in a request, the FOIA/PA Unit assesses, based on information provided in the FOIA request, which Criminal Division section(s) is most likely to have records responsive to the request. The FOIA/PA Unit will then typically send a search request through its electronic FOIA Tracking Database to the specific Section(s). After receiving a FOIA search request, the Criminal Division offices, as the custodians of their own records and the best authorities on what records they would maintain, conduct their own searches

---

[3] The Criminal Division Sections are as follows: the Office of the Assistant Attorney General, the Appellate Section, the Computer Crimes and Intellectual Property Section, the Capital Case Section, the Child Exploitation and Obscenity Section, the Fraud Section, the Human Rights and Special Prosecutions Section, the International Criminal Investigative Training Assistance Program, the Money Laundering and Asset Recovery Section, the Narcotic and Dangerous Drug Section, the Organized Crime and Gang Section, the Office of Enforcement Operations, the Office of International Affairs, the Office of Overseas Prosecutorial Development, Assistance and Training, the Office of Policy and Legislation, the Office of Administration, and the Public Integrity Section. *See also* https://www.justice.gov/criminal/sectionsoffices.

depending on the manner in which they maintain their records and the records

management database systems they use.  The office will then advise the FOIA/PA Unit if

potentially responsive material exists and may request that the FOIA/PA Unit conduct a

search of the office's electronic records (*i.e.* email accounts) in conjunction with the

Criminal Division's Information Technology Management Unit staff. [O'Keefe

Declaration, ¶ 16].

Thus, requests made to the Criminal Division must describe the records sought in

sufficient detail in order to enable Criminal Division personnel to locate any potentially

responsive records with a reasonable amount of effort within a Section(s).  See 28 C.F.R.

§16.3(b).  Reasonably described records should identify, to the extent possible, a specific

investigation, prosecution, or Criminal Division policy to enable FOIA/PA Unit Staff to

determine which Criminal Division Section(s) may maintain potentially responsive

records.  Whenever possible, a request should include specific information about records

sought including the date, title or name, author, recipient, and subject matter of the

records.  In addition, records concerning court cases should include the title of the case,

the court in which the case was filed, and the nature of the case. See 28 C.F.R. §§ 16.3(b)

& 16.41(b).  When a requester seeks records pertaining to information described in a

video or a form of media to which the Criminal Division cannot access in the course of

official business, the requester should provide either a written transcript of the relevant

video or an audio file. [O'Keefe Declaration, ¶ 17].

Absent specific information in the FOIA request regarding the records sought, as

described in paragraph 17, Criminal Division personnel are unable to locate potentially

responsive records.  Because the Criminal Division conducts FOIA searches on a section-by-section basis and does not maintain centralized databases that may be searched for FOIA purposes, FOIA requests must provide sufficient detail to allow the FOIA/PA Unit to assess which Criminal Division section(s) is most likely to maintain responsive records. [O'Keefe Declaration, ¶ 18].

  B.  Plaintiff's Improper FOIA Request

In Plaintiff's FOIA request, dated January 26, 2021, Plaintiff sought records relating to an interview apparently published on Facebook.  Plaintiff provided a hyperlink to view this interview on Facebook and stated that he incorporated the interview by reference.  Plaintiff requested three categories of records pertaining to individuals and topics allegedly addressed and described in this interview. [O'Keefe Declaration, ¶ 19].

After reviewing Plaintiff's FOIA request, the FOIA/PA Unit determined that it did not reasonably describe the interview about which Plaintiff sought categories of records from the Criminal Division.  The only information provided regarding the interview was the subject and date of the interview, as well as a hyperlink to view the interview on Facebook.  Plaintiff did not provide an audio file or transcript of the interview.  The FOIA/PA Unit does not maintain its own agency Facebook account and does not have access to a Department-managed account, which in this case would have been necessary to access the Facebook link to determine the context of the request and the specific Criminal Division records sought by Plaintiff.  Moreover, Plaintiff did not provide any information about a specific Criminal Division investigation, prosecution, or policy that would enable the FOIA/PA Unit staff to reasonably determine which Criminal Division

office(s) could maintain records responsive to Plaintiff's FOIA request. Thus, the FOIA/PA Unit determined that additional information would be required in order to allow Criminal Division staff to locate the records sought with a reasonable amount of effort. [O'Keefe Declaration, ¶ 20].

Accordingly, pursuant to Department regulations, see 28 C.F.R. § 16.3(b), on March 9, 2021, the FOIA/PA Unit requested, via letter, that Plaintiff provide either a written transcript or audio file of the interview referenced to confirm the context of the request and shed light on the Criminal Division records sought. The FOIA/PA Unit further requested the Plaintiff provide any additional information to the Criminal Division about a specific investigation, prosecution, or Criminal Division policy for which he was seeking records. The FOIA/PA Unit also informed Plaintiff of his right to discuss his request and the records he was seeking with the Criminal Division's FOIA Public Liaison, as well as the National Archives and Records Administration Office of Government Information Services and provided relevant contact information. The FOIA/PA Unit noted that upon receipt of additional information, the Office would advise Plaintiff whether his request constituted a proper FOIA request. [O'Keefe Declaration, ¶ 21].

On March 11, 2021, Plaintiff responded to the FOIA/PA Unit, via letter, and did not provide a written transcript or audio file of the interview referenced in his FOIA request. Moreover, Plaintiff did not provide any additional specific information regarding the contents of the interview to reasonably describe the records sought from the Criminal Division. As described *supra* in paragraph 8, Plaintiff reiterated that additional

information was described in the video the FOIA/PA Unit did not have access to. [O'Keefe Declaration, ¶ 22].

Accordingly, on June 17, 2021, the Criminal Division issued a final response informing Plaintiff that his request did not constitute a proper FOIA/PA request. The FOIA/PA Unit further notified Plaintiff that the Office administratively closed the request file associated with his FOIA request. [O'Keefe Declaration, ¶ 23].

It is the requester's responsibility to frame requests with sufficient particularity to enable the searching agency to determine precisely what records are being requested. *Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982). The rationale for the rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters. Therefore, agencies are not required to maintain their records or perform searches that are not compatible with their own document retrieval systems. *Blakely v. Department of Justice,* 549 F.Supp. 362 (D.D.C. 1982), aff'd 720 F.2d 215 (D.C. Cir. 1983)(modified on other grounds). "The linchpin inquiry is whether the agency is able to determine 'precisely what records [are] being requested." *Yeager,* 678 F.2d at 326.

Here, Plaintiff did not provide any information about a specific Criminal Division investigation, prosecution, or policy that would enable the FOIA/PA Unit staff to reasonably determine which office(s) could maintain records responsive to Plaintiff's FOIA request, nor was the FOIA/PA Unit Staff able to access the Facebook link that Plaintiff provided in his FOIA request, which in this case would have been necessary to determine the context of the request and the specific records sought. When notified of these deficiencies, Plaintiff refused to provide the additional information in support of his

24

request that would have been necessary to process his request, thereby rendering his request improper. *See, Keys v. DHS*, NO. 08-0726, 2009 WL 614755, at *5 (D.D.C. Mar. 10, 2009) (ruling that requester failed to reasonably describe records sought by not responding to agency's notice that he must specify which field offices he wanted agency to search). The Criminal Division properly denied Plaintiff's request as improper.

## II. EOUSA

Of the five FOIA requests submitted to EOUSA, EOUSA issued no records responses for the following requests: July 24, 2020 Petraeus); August 26, 2020 (Renewed Attkisson); and January 26, 2021 (Byrne), so these requests are not at issue. The February 2, 2021 (Hardy) request is in search status, and a supplemental response will be submitted when the searches are complete. The February 16, 2021 (Election) request was properly denied, as set forth below.

Plaintiff's February 16, 2021 request sought information regarding vote tampering or foreign involvement with the 2020 U.S. presidential election. EOUSA submitted a deficiency letter to Plaintiff on March 23, 2021. The deficiency letter indicated that the files and records of United States Attorneys are maintained in over one hundred separate offices throughout the United States. EOUSA requested that Plaintiff identify the specific USAOs where he believed records may be located. This would be primarily the district(s) in which a prosecution or litigation occurred. EOUSA processes requests for records that can be in over 94 separate offices throughout the United States. For a FOIA request to be perfected, it must indicate which USAO records are being sought. If that information is not provided or cannot be ascertained on the face of the request, the request is considered

improper. EOUSA never received a response from Plaintiff to cure the deficiency. The request was subsequently closed. [Kain Declaration, ¶ 23-24; 39-40].

For a FOIA request to be proper, two requirements must be met: "(1) the request must 'reasonably describe the records sought'; and (2) it must be 'made in accordance with the published rules stating the time, place, fees (if any), and procedures to be followed.'" *Lowe v. DEA*. No. 06-1133, 2007 WL 2104309, at *4 (D.D.C. July 22, 2007)(citing 5 U.S.C. §552(a)(3)(A)). "Records are reasonably described when the description would enable a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort," but "broad sweeping requests lacking specificity are not sufficient." *Tooley v. Bush*, No. 06-306, 2006 WL 3783142, at *14 (D.D.C. Dec.21, 2006).

Here, Plaintiff failed to reasonably describe the records sought because he did not respond to EOUSA's letter notifying him that he must identify specific offices to be searched. *See, Keys*, 2009 WL 614755 at *5. Thus, EOUSA properly closed the request as deficient.

### III.   OIG

Of the seven FOIA requests submitted to OIG, OIG issued no records responses for the following requests: July 22, 2020 (Surveillance), July 24, 2020 (Petraeus), August 25, 2020 (Third Party Storage), January 26, 2021 (Byrne), Part 1 of February 2, 2021 (Hardy), and February 16, 2021 (Election), so these requests are not at issue.

In response to Part 2 of the February 2, 2021 (Hardy) request, OIG performed an adequate search, located 3 pages of responsive records, and properly withheld portions of

the responsive records pursuant to Exemption (b)(6). In response to the July 22, 2020 (Attkisson) request and Part 3 of the February 2, 2021 (Hardy) request, OIG issued *Glomar* responses pursuant to Exemption (b)(7)(C).

A. <u>February 2, 2021 (Hardy) Part 2: Adequate Search & Proper Withholding</u>

OIG addressed the February 2, 2021 (Hardy) request in three parts: (1) investigations arising from Plaintiff's January 27, 2020 letter, resulting in a no records response; (2) communications whereby OIG referred matters raised in the January 27, 2020 letter from Plaintiff; and (3) investigations of David M. Hardy. [Perez Declaration ¶ 20]. The only OIG search potentially at issue is Part 2 of this request. OIG requested that its Cyber Investigation Office (CIO) conduct a search for emails within the OIG that were responsive to Plaintiff's request whereby OIG referred the matter to FBI or EOUSA. [Id. at ¶ 21]. CIO searched the email accounts of OIG employees responsible for handling the referral of this matter. [Id. at ¶ 22]. The search yielded three potentially responsive documents. OIG withheld portions of records from disclosure pursuant to Exemption (b)(6). [Id. at ¶ 23]. OIG's withholdings are also supported by the Vaughn Index accompanying the Perez Declaration.

Exemption 6 authorizes OIG to withhold information about individuals that is contained in "personnel and medical files and similar files," when release of the information would constitute a clearly unwarranted invasion of personal privacy, i.e., when the privacy interests in that information outweigh the public interest in disclosure. When making the balancing determination, the standard of public interest OIG must consider is the "core purpose" of "shed(ding) light on an agency's performance of its

statutory duties." *U.S. Dep't of Justice v Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989). [Id. at ¶ 27].

In order to invoke FOIA exemption 6 as to the information redacted in the documents, OIG first had to conclude that the documents relating to plaintiff's request qualified as a "personnel, medical or similar file."  In the responses provided to plaintiff in which OIG invoked exemption 6, OIG determined that the documents concerned allegations of work-related misconduct against individuals other than the plaintiff, and therefore qualified as "personnel" or "similar files" under exemption 6, which enabled the identity of third parties to be protected. [Id. at ¶ 28].

Once OIG determined that information in the requested documents met the threshold requirements of exemption 6, it then considered the strength of the privacy interests of the individuals at issue and weighed those interests against the public interest in disclosure-i.e., conducted a balancing of individual privacy interests and the public interest in disclosure. In doing so, OIG considers whether disclosure of the information sought would advance a significant public interest that the FOIA requester identifies. In this case, the requester did not identify any public interest that would be served through disclosure of the requested material. Moreover, OIG did not identify any public interest that would outweigh the privacy interests at issue. [Id. at ¶ 30].

B.  February 2, 2021 (Hardy) Part 3 *Glomar* Response

For part three of the February 2, 2021 request, OIG informed Plaintiff that OIG could not confirm or deny the existence of any such records.  Without the consent of the individuals referenced in the request, an official acknowledgement of an investigation

involving them, or an overriding public interest, acknowledging the existence of any such records could reasonably be expected to constitute an unwarranted invasion of privacy. This information is properly exempt from FOIA disclosure under FOIA exemptions (b)(7)(C). [Id. at ¶ 23].

C. July 22, 2020 (Attkisson) *Glomar* Response

Plaintiff's July 22, 2020 request to OIG sought information regarding alleged surveillance of Sharyl Attkisson and of any journalists or media companies. OIG denied this request and informed Plaintiff that OIG could not confirm or deny the existence of any such records. Without the consent of the individuals referenced in the request, an official acknowledgement of an investigation involving them, or an overriding public interest, acknowledging the existence of any such records could reasonably be expected to constitute an unwarranted invasion of privacy. This information is properly exempt from FOIA disclosure under FOIA exemptions (b)(7)(C). [Perez Declaration ¶ 10].

In order to invoke FOIA exemption 7(C) in both of the *Glomar* responses, OIG has to make a determination that the documents relating to Plaintiff's request were compiled for "law enforcement purposes." OIG is vested with authority to investigate allegations of misconduct by Department employees. In the documents for which OIG invoked exemption 7(C), the requests involved alleged misconduct and the information relating to them was filed in OIG's investigative records system. Accordingly, the OIG concluded that the documents qualified as "law enforcement" information under exemption 7(C). [Id. at ¶ 29].

Once OIG determined that information in the requested documents met the threshold requirements of exemption 7(C), it then considered the strength of the privacy interests of the individuals at issue and weighed those interests against the public interest in disclosure-i.e., conducted a balancing of individual privacy interests and the public interest in disclosure. In doing so, OIG considers whether disclosure of the information sought would advance a significant public interest that the FOIA requester identifies. In this case, the requester did not identify any public interest that would be served through disclosure of the requested material. Moreover, OIG did not identify any public interest that would outweigh the privacy interests at issue. [Id. at ¶ 30].

D.  <u>Foreseeable Harm Analysis</u>

In 2016, Congress enacted the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016), in which it mandated that agencies may only withhold information under a FOIA exemption if the agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law[.]"  FOIA Improvement Act § 2, 130 Stat. at 539 (codified at 5 U.S.C. § 552(a)(8)(A)(i)).  In reviewing the responsive records and applying FOIA Exemptions 6, the OIG determined that foreseeable harm would result from the release of allegations of work-related misconduct pertaining to individuals other than the plaintiff. In denying certain of Plaintiff's requests based on Exemption 7(C), the OIG determined that foreseeable harm would result from confirming or denying the existence of matters under investigation that had not previously been made public. [Id. at ¶ 31].

## IV.    NSA

An understanding of the origin and missions of NSA, as well as the importance of the role of signals intelligence ("SIGINT") in NSA's mission, is critical to any FOIA analysis and is explained in detail in paragraphs 5-10 of the Kiyosaki Declaration, incorporated herein.

Of the six FOIA requests submitted to NSA, only the July 22, 2020 (Surveillance), Parts 2-7 and February 16, 2021 (Election), Part 2, resulted in searches, which yielded no records responses and are therefore not at issue.

NSA properly issued *Glomar* responses to the July 22, 2020 (Attkisson), August 25, 2020 (Third Party Storage), and portions of the February 16, 2021 (Election) requests based on the classified nature of the requested information pursuant to Exemption 1 and/or because the requested information was protected from release by statute pursuant to Exemption 3.

NSA properly denied the July 22, 2020 (Surveillance) Part 1 request pursuant to Exemption 3. NSA properly denied the August 26, 2021 (Renewed Attkisson) as a duplicate request of the July 22, 2020 (Attkisson), to which NSA had already issued a *Glomar* response.

Finally, NSA properly referred the January 25, 2021 (FISA) request and portions of the February 16, 2021 (Election) request to other agencies because NSA determined those requests did not appear to be seeking records controlled or created by NSA and instead sought material that originated with other government agencies.

31

A.  *Glomar* Responses

NSA interpreted the July 22, 2020 (Attkisson), August 25, 2020 (Third Party Storage), and portions of the February 16, 2021 (Election) requests as ones seeking intelligence records, specifically COMINT, which includes intercepted foreign government communications. To the extent a Plaintiff seeks intelligence information, NSA's response is to state that it cannot confirm or deny publicly in any case whether or not it has such records, as doing so would reveal whether or not NSA engaged in certain, or any, intelligence activities, and/or did or did not target individual communications for collection. [Kiyosaki Declaration, ¶¶ 18, 41 & 61].

NSA properly determined that any response other than a *Glomar* response to these requests would reveal information that is currently and properly classified in accordance with E.O. 13526 and protected from disclosure by statute, thereby invoking FOIA Exemptions 1 and 3. A detailed analysis of NSA's *Glomar* determinations for each of these requests is provided in paragraphs 18-35, 41-55 and 61-78 of the Kiyosaki Declaration, incorporated herein by reference.

B.  July 22, 2020 (Surveillance) Part 1 Denial Under Exemption 3

NSA interpreted the first prong of the July 22, 2020 (Surveillance) request as seeking records of searches purportedly performed by contractors. Information regarding NSA contracts or its contractors is statutorily protected by Section 6 of the National Security Agency Act of 1959, 50 U.S.C. §3605. [Kiyosaki Declaration, ¶ 39].

NSA cannot be compelled to disclose any information with respect to its activities, including it contracting activities. Further, NSA is not required to demonstrate specific

harm to national security when invoking this statutory privilege, rather, NSA need only to show that the information falls within the scope of Section 6. NSA's organization, functions, activities and nonpublic personnel are therefore protected from disclosure regardless of whether or not the information is classified. Since no portion of any such material regarding NSA contracts or contractor activities is reasonably segregable, Part 1 of the July 22, 2020 (Surveillance) request was denied.

C.  August 26, 2020 (Renewed Attkisson) Denial as Duplicate

The materials requested by Plaintiff's August 26, 2020 (Renewed Attkisson) were identical to those requested in the July 22, 2020 (Attkisson) request. The only difference between the two requests was the inclusion of a written release authorization from Attkisson in the second request, which had no bearing on NSA's *Glomar* response to the first request. Therefore, NSA determined that declining to process the duplicate request was appropriate. [Kiyosaki Declaration, ¶ 56-57].

D.  January 25, 2021 (FISA) Referral to FBI

NSA located potentially responsive documents to this request but determined that the responsive material originated with FBI. Given that NSA did not originate the materials, NSA was unable to make a determination as to the releasability, and accordingly, referred the material to FBI. [Kiyosaki Declaration, ¶ 58-60].

E.  February 16, 2021 (Election) Parts 3, 5, 7 & 9 Referrals to Other Agencies

Several portions of the February 16, 2021 (Election) request sought information which would not be created or controlled by NSA. Specifically, Parts 3 and 5 requested

records pertaining to "U.S. Government, its agents, its contractors, or third parties acting

on its behalf," and Parts 7 and 9 sought evidence pertaining to "state and local" officials

and "persons or entities in the United States," respectively. NSA determined that the

information sought did not fall within the Agency's Signals Intelligence or Cybersecurity

Mission and accordingly provided Plaintiff with contact information for the FBI and

Department of Homeland Security, as those agencies would be more likely to possess the

requested information. [Kiyosaki Declaration, ¶ 79].

## V.     CIA

Of the five[4] FOIA requests submitted to CIA, CIA appropriately issued *Glomar*

responses to the majority of the requests. As to Part 2 of the February 16, 2021 (Election)

request, CIA conducted an adequate search, located 36 responsive documents, and

properly withheld the documents in their entirety pursuant to Exemptions (b)(1) and

(b)(3).

### A. *Glomar* Responses

CIA issued *Glomar* responses in the following requests: July 22, 2020 (Attkisson),

July 22, 2020 (Surveillance), August 25, 2020 (Third Party Storage), January 25, 2021

(FISA), and February 16, 2021 (Election) Parts 1 & 3-9. [Kiyosaki Declaration, ¶ 8-21].

CIA offered a *Glomar* response to most portions of the requests because acknowledging

the existence or nonexistence of records responsive to those portions would reveal

classified or statutorily-protected information within the meaning of Exemptions (b)(1)

---

[44] CIA grouped the July 22, 2020 (Attkisson) and duplicate August 26, 2020 (Renewed Attkisson) as one request, addressed in paragraphs 8-10 of the Blaine Declaration.

and (b)(3). A detailed analysis of CIA's *Glomar* responses is included in paragraphs 22-37 of the Blaine Declaration, incorporated herein by reference.

      B.  <u>February 16, 2021 (Election) Part 2 Search & Withholdings</u>

CIA processed documents in response to Part 2 of the February 16, 2021 (Election) request, which sought, "[a]ll U.S. Government reports about foreign interference in the 2020 President election, e.g., the report produced by former Director of National Intelligence John Ratcliffe." CIA performed an exhaustive electronic and hard copy search of agency records for CIA-originated records, as detailed in paragraphs 38-40 of the Blaine Declaration, incorporated herein by reference.

As a result of the searches, CIA located 36 responsive records. CIA withheld all of the documents in their entirety pursuant to FOIA Exemptions 1 & 3, as is detailed in paragraphs 42-54 of the Blaine Declaration, as well as the accompanying Vaughn Index, incorporated herein by reference.

## **<u>CONCLUSION</u>**

Because Defendants conducted reasonable searches in response to Plaintiff's FOIA requests, properly denied deficient requests, properly issued *Glomar* responses as appropriate, and properly withheld information pursuant to appropriate FOIA exemptions, Defendants are entitled to summary judgment.

                    Respectfully submitted,

                    BRIT FEATHERSTON
                    UNITED STATES ATTORNEY

                    */s Andrea L. Parker*

ANDREA L. PARKER
Assistant United States Attorney
Texas Bar No. 00790851
550 Fannin, Suite 1250
Beaumont, Texas 77701
Tel:    (409) 839-2538
Fax:    (409) 839-2550
Email: andrea.parker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2022, a true and correct copy of the foregoing

document was filed electronically with the court and has been sent to counsel of record

via the court's electronic filing system.

*/s/ Andrea L. Parker*
ANDREA L. PARKER
Assistant United States Attorney

36