IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE TRANSPARENCY PROJECT,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, et al<br><br>Defendants. | CIVIL ACTION No. 4:21CV121<br><br>JUDGE SEAN D. JORDAN |

**DEFENDANTS DOJ, CIA, AND NSA'S REPLY TO
PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND
RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants the United States Department of Justice ("DOJ")[1], the National Security Agency ("NSA"), and the Central Intelligence Agency ("CIA"), reply to Plaintiff's Response in Opposition to Defendants DOJ, CIA and NSA's Motion for Summary Judgment and oppose Plaintiff's purported Cross-Motion for Summary Judgment. [ECF No. 37].

## INTRODUCTION

On July 25, 2022, Defendants DOJ, NSA, and CIA filed a Motion for Summary Judgment, establishing that for each of the ten individual FOIA requests at issue in this case, the searches were adequate and the withholdings under each of the FOIA

---

[1] The DOJ components in this motion include the Criminal Division ("CRM"); the Office of Inspector General ("OIG"), the Executive Office of United States Attorneys ("EOUSA"); and the Civil Rights Division ("CRT").

Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment and
Response to Plaintiff's Cross-Motion for Summary Judgment

1

exemptions were proper. [ECF No. 32]. In response, Plaintiff generally argues waiver based on inadequate briefing and conclusory declarations. [ECF No. 37]. Defendants stand behind the briefing, detailed agency declarations, and Vaughn Indices as accurate, adequate and not requiring further clarification.

In addition to the general objection to Defendants' briefing, Plaintiff raises a few specific areas of concern by agency, all of which are without merit and addressed briefly below.

## ARGUMENT & AUTHORITIES

### I.     CRIMINAL DIVISION

The sole issue relative to the Criminal Division is whether the Criminal Division properly denied Plaintiff's January 26, 2021 (Byrne) request as improper, due in part because the Criminal Division was unable to access a hyperlink to an interview on which the request was based, and Plaintiff refused to provide a transcript or audio file of the interview in question. In Plaintiff's response, he provides a different link to the interview than was originally provided in the request, and the Criminal Division is now able to access the new link. As a result, the parties have agreed to deem the request perfected based on the new link, and the Criminal Division is currently processing the request. The parties will notify the Court if additional briefing is necessary for this request when processing is complete.

## II. EOUSA

Plaintiff's only challenge to EOUSA is that the February 16, 2021 request was improperly closed and should have been directed to every U.S. Attorney's Office. The final response letter sent to Plaintiff plainly stated, *"[t]he files and records of United States Attorneys are maintained in over one hundred separate offices throughout the United States. Please identify the specific United States Attorney's office(s) where you believe records may be located. This would be primarily the district(s) in which a prosecution or litigation occurred."* [ECF No. 32, Exhibit B, Attachment N]. Significantly, Plaintiff does not contest that he failed to cure the request by providing additional information after it was closed by EOUSA. A request is not perfected if it does not outline the specific districts where records may be located. EOUSA cannot assume to know which districts are of interest to a requester. When unperfected requests are closed, requesters are given the reason why and given an opportunity to cure the deficiency. Once the request in question was closed, Plaintiff was able to cure the request by indicating which districts he wanted records from. He did not reach out to EOUSA with that information. It is up to the requester to outline the records they are seeking and where they are seeking those records from. It overburdensome to task 94 individual USAO, especially if the requester may not be seeking records from every single USAO. The matter was appealed to the Office of Information Policy. That would have been another opportunity to identify the specific USAOs to task for a search, but the

administrative process was not completed before the matter was litigated. Thus, EOUSA properly closed the request as deficient.

### III.   OIG

Plaintiff challenges OIG's *Glomar* responses pursuant to Exemption (b)(7)(C) to the February 2, 2021, Part 3 (Hardy) request and the July 22, 2020 (Attkisson) request. OIG's *Glomar* response to Part 3 of the Hardy request is adequately addressed in the Declaration of Ofelia C. Perez at paragraphs 20-23. [ECF No. 32, Exhibit E, ¶¶ 20-23]. OIG informed Plaintiff that OIG could not confirm or deny the existence of any such records without the consent of the individuals referenced in the request, an official acknowledgement of an investigation involving them, or an overriding public interest. Plaintiff cites to two letters as evidence that OIG's *Glomar* response is improper. One letter was written by Plaintiff's counsel, Ty Clevenger, and the second letter was written by another FOIA client of Plaintiff's counsel, Brian Huddleston. Self-serving letters written by Plaintiff's counsel or at the direction of Plaintiff's counsel do not equate to official acknowledgement of an investigation or an overriding public interest sufficient to outweigh a privacy interest.

OIG's *Glomar* response to the July 22, 2020 (Attkisson) request is adequately addressed in the Declaration of Ofelia C. Perez at paragraphs 9-10. [ECF No. 32, Exhibit E, ¶¶ 9-10]. The identical August 26, 2020 request referenced by Plaintiff is not addressed in the Perez Declaration because OIG has no record of receiving the August 26th request, and that request was never processed by OIG. Plaintiff argues that OIG

acknowledged the August 26th request on page 33 of Defendants' motion for summary judgment, but that reference is misleading, as it pertains to NSA, not OIG.

## IV.   NSA

Plaintiff first faults NSA for failing to consult with Plaintiff prior to filing the motion for summary judgment so that Plaintiff could provide NSA with a proper interpretation of his requests. This argument is absurd. NSA stands behind the adequacy of its searches as detailed in the Declaration of Linda M. Kiyosaki as accurate and not requiring clarification. [ECF No. 32, Exhibit F]. Moreover, in footnote 4 of Plaintiff's Response, Plaintiff hypothesizes that NSA *may* have only searched names in connection to certain key phrases, which is inaccurate. NSA refers the Court to the actual language of paragraph 37 of the Kiyosaki Declaration in response. [Id. at ¶ 37].

In paragraph 4(a) of the Response, Plaintiff questions the legitimacy of the NSA's assertion of exemptions premised on national security concerns. Plaintiff's argument is based on pure speculation. NSA stands behind its asserted exemptions in the Kiyosaki Declaration as accurate and not requiring clarification. [ECF No. 32, Exhibit F].

In paragraph 4(b) of the Response, Plaintiff incorrectly refers to a July 26, 2020 request. The proper request is actually dated July 22, 2020. Plaintiff then incorrectly argues that NSA did not respond to prongs 2-7 of his request, despite referring to NSA's response to prongs 2-7 on page 6 of the Response. NSA refers the Court to Paragraph 13 of the Kiyosaki Declaration, detailing its search of prongs 2-7 of the July 22, 2020 request. [Id. at ¶ 13].

In paragraph 4(c) of the Response, Plaintiff claims NSA "punted the ball" by referring requests to other agencies and that NSA must produce records even if they did not originate with NSA. Plaintiff misstates the standard regarding referrals. When processing requests for records that originate with another agency, agencies have discretion whether to engage in a consultation with the originating agency or refer the request to the originating agency outright. In particular, FOIA explicitly permits "consultation…with another agency having a substantial interest in the determination of the request," 5 U.S.C. §552(a)(6)(B)(iii)(III), and if an agency chooses an outright referral instead, "the advantages that would be secured by delegating all responsibility or reviewing the document…rather than engaging in… 'consultation'…must then be balanced against any inconvenience to the requester caused by the referral," *Sussman v. U.S. Marshals Service,* 494 F.3d 1106, 1118 (D.C. Cir. 2007), citing *McGehee v. CIA*, 697 F.2d 1095, 1111 n. 71 (D.C. Cir. 1983).

Regarding the January 25, 2021 request, NSA opted to make an outright referral to the FBI, as detailed in a letter to Plaintiff dated March 5, 2021. [ECF 32, Exhibit F, Exhibit F]. NSA advised Plaintiff of the referral and provided him a point of contact to make inquiries about the status of the referral. Additionally, the request was also submitted to the FBI by Plaintiff, and the FBI is a party to this lawsuit. Plaintiff cannot demonstrate any inconvenience caused by this referral.

Regarding the February 16, 2021 request, Plaintiff erroneously claims that NSA simply stated that the requested documents likely originated elsewhere. Plaintiff ignores

that NSA also issued a partial *Glomar* response to this request. NSA refers the Court to Exhibit G of the Kiyosaki Declaration. [ECF No. 32, Exhibit F, Exhibit G].

## V. CIA

As adequately explained in the Declaration of Vanna Blaine, the CIA offered a *Glomar* response to most portions of Plaintiff's requests because acknowledging the existence or nonexistence of records responsive to those portions would reveal classified or statutorily protected information within the meanings of Exemptions (b)(1) and (b)(3). [ECF No. 32, Exhibit G]. Plaintiff's response that the CIA might be improperly classifying information is based on pure speculation. For example, Plaintiff argues that if the CIA is surveilling journalists in the United States, then the CIA is engaged in illegal activity. Plaintiff unsuccessfully attempted the same arguments in this court in *The Transparency Project v. DOJ,* Case No. 4:21-CV-467. The Report and Recommendation of the United States Magistrate Judge flatly rejected similar arguments. [4:21-CV-467, ECF No. 64, pp. 59-73].

## VI. PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

While Plaintiff's filing purports to be a "Cross-Motion for Summary Judgment," he does not actually move for summary judgment, and merely labeling a response as a "cross-motion" does not render it a proper motion. Therefore, the Court should summarily deny Plaintiff's "cross-motion" and grant Defendants' Motion for Summary Judgment for all the reasons set forth in their motion. [ECF 32].

## CONCLUSION

Because Defendants conducted reasonable searches in response to Plaintiff's FOIA requests, properly denied deficient requests, properly issued *Glomar* responses as appropriate, and properly withheld information pursuant to appropriate FOIA exemptions, Defendants are entitled to summary judgment.

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY

*/s Andrea L. Parker*
ANDREA L. PARKER
Assistant United States Attorney
Texas Bar No. 00790851
550 Fannin, Suite 1250
Beaumont, Texas 77701
Tel:   (409) 839-2538
Fax:   (409) 839-2550
Email: andrea.parker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2022, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

*/s/ Andrea L. Parker*
ANDREA L. PARKER
Assistant United States Attorney